NEW JERSEY BELL TELEPHONE COMPANY, PROSECUTOR, v. THE CITY OF CAMDEN, RESPONDENT.

Argued January 19, 1939—Decided March 10, 1939.

Before Justices CASE, DONGES and PORTER.

For the prosecutor, *J. Henry Harrison, Robert F. Darby, Frankland Briggs* and *Leonard A. Sweney.*

For the respondent, *Firmin Michel* and *William J. Shepp.*

The opinion of the court was delivered by

CASE, J.   The writ brings up for review a judgment of the State Board of Tax Appeals made September 28th, 1937. The attack is upon the amount of an assessment for the year 1936 which that judgment affirmed in the sum of $2,500,000 upon the tangible personal property of the prosecutor within the city of Camden.

Prosecutor builds up its case mainly on the proposition that the assessment is not at the constitutional "true value" as developed by our decisions and that under the evidence there may not be a valuation in excess of $1,750,000.   The respondent resists by arguing, first, that the Telephone Company's expert was not qualified to testify as to the value of the property; next, that the testimony as to value is not such as to be material upon the legality of the assessment and that there is nothing in the record to show that the assessment made by the assessors was erroneous; and, finally, as a conclusion, that prosecutor has failed to establish by competent evidence any value of the property and has not carried the burden of proving that the assessment made by the Board of Assessors of the city of Camden is erroneous.   The issue is whether, on the testimony presented before us, the assess-

ment should stand at $2,500,000 and, if not, then to what figure it should be reduced. Respondent presents no testimony. It rests on the bare fact of an assessment, with such presumption as that may carry, and upon what it alleges to be the insufficiency of the prosecutor's proofs.

The constitutional provision, article IV, section VII, paragraph 12, is that "Property shall be assessed for taxes under general laws and by uniform rules, according to true value." The words "true value" have been judicially defined to mean the price in money which a willing seller could obtain for the property from a willing buyer at a fair sale as of the assessment date under private contract. *Universal Insurance Co.* v. *State Board of Tax Appeals,* 118 *N. J. L.* 538; affirmed, 120 *Id.* 185; *New Jersey Bell Telephone Co.* v. *Newark,* 118 *Id.* 490; *Turnley* v. *Elizabeth,* 76 *Id.* 42.

The assessment for 1935 was $1,420,000. For the year 1936 the city assessors raised the assessment to $2,500,000, an increase of $1,080,000, without, so far as appears, any material increase in the amount or value of that property. The testimony of Ralph R. Rumery, an expert of many years standing in the valuing of utilities, produced by the prosecutor, is that the fair market value of the property as between a willing buyer and a willing seller was $1,750,000. That specific testimony, with its context, meets, so far as a categorical statement is concerned, the requirements of the true value rule.

Respondent may not now attack the qualification of the witness, because at the taking of the testimony it freely conceded that qualification. It may, however, and does, question the methods of valuation upon which the witness' conclusions are based.

It appears from the testimony that the witness, in undertaking to make his valuation, first made an inspection of the property of the company in Camden, examined all of the central office equipment, furniture and fixtures and building equipment in the main office building, the private branch exchange in the R. C. A.-Victor plant and the outside property throughout the city. He grouped the property, generally,

as continuous, or outside, property, which included such classes as poles, wires, cables, conduits, manholes, terminal loading coils and everything that was visible to the eye, and as non-continuous, or inside, property, which included such classes as central office equipment, private branch exchanges, furniture and fixtures, tools and implements, building fixtures, materials and supplies. He then obtained an inventory of the property from the prosecutor and developed cost units for the various classes of property except central office equipment and large private branch exchanges. He next applied the cost units so developed to the continuous, or outside, property in order to get the reproduction cost, new, of that property, as of October 1st, 1935. As to central office equipment, large private branch exchanges and furniture and fixtures he developed the reproduction cost as of October 1st, 1935, by the use of index figures. The witness explained the significance of index figures, or index numbers, and their application for appraisal purposes and testified, without contradiction, that the method was generally accepted by the engineering profession and that, although it does not produce an exact cost to reproduce new, it nevertheless results in a very close approximation. Sufficient to say here that the system consists of a series of approved tables whereby the reproduction cost, new, in any given year may be calculated by percentage data based on a fixed year treated as the norm. In addition to the pricing of the non-continuous property for reproduction by the use of index figures, the witness also determined the reproduction cost of non-continuous (inside) property by the same method as he had previously done with the continuous property. By these several methods the witness found the reproduction cost, new, of the property, determined the average age of each class of the property and the life periods of each class, arrived at what was in his judgment the condition of the property as of October 1st, 1935, and then applied to the reproduction cost, new, percentages representing per cent. conditions of the property, as of the assessment date, in order to reach his estimate of the depreciated or present value of the property. He found a depreciated repro-

duction cost for the entire property of $1,850,000. The witness also approached the valuation by determining the prosecutor's dollar investment in the property, that is to say, the historic or book cost of the property on the date of the assessment. In doing this he used the inventory, *supra*, for a list of the various items of property and the quantities thereof. For central office equipment, the larger private branch exchanges, furniture and fixtures, tools and implements, building fixtures and materials and supplies—the noncontinuous property—he took the actual book figures. As to the continuous property he applied the prosecutor's average retirement units for the southern division in which the city of Camden is located. Having thus reached the book cost of the continuous property, he applied thereto various percentages representing the condition of the property on the date of assessment and thus reached a depreciated book cost at $1,700,000. The witness had thus, by different methods, reached two figures, a depreciated historic or book cost of $1,700,000 and a depreciated reproduction cost of $1,850,000. He considered the trend of earnings for the system as a whole but, for reasons given by him, did not modify his figures in that respect. He did, however, consider absolescence. From all of the elements which he considered and described in his testimony the witness reached a market value as of October 1st, 1935, of $1,750,000.

The oral testimony was supplemented by voluminous exhibits. *Exhibit 1* is the inventory mentioned *supra; Exhibit 2* is the book cost of prosecutor's personal property itemized under twenty-three classifications; *Exhibit 3,* reproduction costs; *Exhibit 4,* reproduction cost of central office equipment by the use of index figures; *Exhibit 5,* appraisal of central office equipment and private branch exchanges in the city of Camden as of October 1st, 1935, without the use of index figures; in all one hundred and forty printed pages of precise data integrated into the testimony of the witness and not contradicted.

So it appears that the assessors, without explanation, increased the assessment upon personal property in one year

by more than $1,000,000, whereupon prosecutor threw open
its books to the city's representatives, listed its property in
understandable terms and by distinguishing description, put
in evidence of the cost price, showed in particularity the
depreciations which were claimed; showed, further, present
day reproduction costs and the depreciation which it claims
should be allowed thereon; and, finally, proved by an expert
long familiar with utilities what the willing buyer-willing
seller price in his opinion is. All without denial except for
the force to be given the fact that the assessors actually
assessed at $2,500,000. The good faith of taxing officials
and the validity of their actions are presumed and when
assailed the burden of the proof is upon the complaining
party. *Central Railroad Company of New Jersey* v. *State
Tax Department,* 112 *N. J. L.* 5, 14; *Sunday Lake Iron Co.*
v. *Township of Wakefield,* 247 *U. S.* 350; 62 *L. Ed.* 1154;
*City of Camden* v. *State Board of Tax Appeals et al.,* 122
*N. J. L.* 253. Just how far that presumption will carry has
not been determined in our courts, but in our opinion it will
not stand up against uncontradicted evidence contrary to the
presumption. It is said by Mr. Wigmore in his work on
Evidence, second edition, section 2491, volume 5, pages 451,
452, that:

"Nevertheless, it must be kept in mind that the peculiar
effect of a presumption 'of law' (that is, the real presump-
tion) is merely to invoke a rule of law compelling the jury
to reach the conclusion *in the absence of evidence to the con-
trary* from the opponent. If the opponent *does* offer evidence
to the contrary (sufficient to satisfy the judge's requirement
of some evidence), the presumption disappears as a rule of
law and the case is in the jury's hands free from any rule:
(cases cited). It is therefore a fallacy to attribute (as do
some judges) an artificial probative force to a presumption,
increasing for the jury the weight of the facts, even when the
opponent has come forward with *some* evidence to the con-
trary." 5 *Wigmore on Evidence* (2d ed.) 451, 452, § 2491.
(Italics are Wigmore's.)

In partial illustration, the presumption that the operator
of an automobile was acting as the servant or agent of the

owner (*Mahan* v. *Walker*, 97 *N. J. L.* 304), is overcome by uncontradicted evidence that the automobile was not being used by the owner or for him. *Fox* v. *Minahan*, 114 *Id.* 33. It is said on behalf of the respondent that the pamphlets, publications and information supplied by the Department of Commerce and the bulletins of price quotations are not evidential. This has reference to the use made by the witness Rumery of certain tables referred to as index numbers in the computation of a portion of the non-continuous property. It is not necessary for us to pass upon respondent's contention in terms for the reason that it is not an issue before us. The government publications are not in evidence. It was the testimony of the witness that the method of the valuation wherein he used the index numbers was generally accepted by the engineering profession and that, while the method does not give the exact cost of reproducing anew, it does give a very close approximation of that cost. That testimony is not denied. The witness had extended personal experience as an expert upon costs and values of utilities and utility property, and he used the tables as an instrumentality which he, from his knowledge of labor and material prices, had found to be a correct means of determining values closely approximating the actual values. The situation is different, we think, from the line of cases headed by *E. Clemens Horst Co.* v. *Peter Breidt City Brewery*, 94 *Id.* 230, and *Crowley* v. *E. Homan Co.*, 3 *N. J. Mis. R.* 968. But, however that may be, the contention is not controlling, for the reason that, as we have stated, the values were also ascertained and testified to by the witness from the pursuit of another method.

We conclude that the testimony of the witness upon assessment value was evidential and material and that his conclusion as to lump sum value and sale value has probative force. That being so, there is competent uncontradicted evidence that the assessment by the assessors was erroneous and that the assessment value under the rule stated *supra* is not greater than $1,750,000—in itself an increase of $330,000 over the valuation established by the assessors for the preceding year upon essentially the same property. The prosecutor is entitled to

a judgment of this court fixing the sum of $1,750,000 as the true value of prosecutor's tangible personal property as of October 1st, 1935, for taxation by the city of Camden for the year 1936.